We find no error in the judgment appealed from, maintaining the exception of no right or cause of action and dismissing plaintiff's suit at her cost.

Judgment affirmed.

PONDER, J., absent.

## COUSSONS v. SMYTHE.

### No. 6110.

Court of Appeal of Louisiana.
Second Circuit.

July 5, 1940.

Rehearing Denied Aug. 1, 1940.

R. D. Watkins, of Minden, for appellant.

A. S. Drew, of Minden, for appellee.

TALIAFERRO, Judge.

This suit is a sequel to that between the same parties which was on appeal to this court dismissed as of nonsuit. 178 So. 657.

The petition in the present case is identical in phraseology and allegations to that in the former suit. The reformation of an act of sale between the parties as regards a description of the land covered thereby is sought.

Plaintiff alleges that he is the owner and in the possesion of the following described tracts of land in Webster Parish, designated herein for convenience as "A" and "B", to-wit:

"A"

"Beginning at the Northwest corner of the SE 1/4 of the SE 1/4 of Section 5, Township 17 N, Range 8 West, Webster Parish, Louisiana, and run South to the branch; thence run 36 yards down the branch; thence run East to the Minden and Sparta Public Road; thence run along said road in a Northerly direction to the North line of the SE 1/4 of the SE 1/4 of Section 5; thence run West to the point of beginning, containing 13 acres, more or less, Webster Parish, Louisiana.

"B"

"Also a tract of land described as beginning at the Southwest corner of the NE 1/4 of the SW 1/4 of Section 5, Township 17 N., Range 8 West, Webster Parish, Louisiana, and thence run South 89 degrees 7 minutes East 2640 feet to the Southeast corner of the NW 1/4 of the SE 1/4; thence run North 382 feet, more or less to the Minden and Sparta Public Road; thence run North 33 degrees 30 minutes West with said road 531 feet; thence run South 75 degrees and 30 minutes West 2443 feet to the West line of the NE 1/4 of the SW 1/4 of Section 5; thence run South 206 feet to the point of beginning containing 27-1/4 acres, more or less and situated in Webster Parish, Louisiana."

He also alleges that he acquired the lands from defendant, Chester G. Smythe, on April 24, 1935, by notarial act of sale recorded in the official conveyance records of Webster Parish; that through error and mistake the deed does not describe said two tracts, but does describe the following tract not then owned by defendant and which he did not intend to sell, nor did plaintiff intend to buy, to-wit: "All that part of tract of land East of Old Minden-Sparta Road in the Northwest Quarter of the Southeast Quarter of Section 5, Township 17 N., Range 9 West, Webster Parish, Louisiana, which has not been previously deeded to C. S. Coussons, containing thirty-three acres, more or less, with improvements thereon."

The consideration in the act of sale is declared to be $50 in cash and: " * * * the assumption by the vendee herein to pay the amount and sum of Six Hundred and No/100 ($600.00) Dollars, which amount is figured to be due on the property herein transferred under mortgage note in favor of the Federal Land Bank of New Orleans, dated June 17th, 1924, in the original amount of $2200.00 recorded in Mortgage Records of Webster Parish, Louisiana, Vol. A-1 page 413, which said mortgage covers additional property, other than that herein described."

Defendant now admits that the description in the deed by him to plaintiff is erroneous and avers that he intended to sell and plaintiff intended to purchase all of the land owned by defendant in the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4) of Section 5, Township 17 N., Range 8 W. He additionally alleges that plaintiff has not paid the $600 to the

Federal Land Bank as agreed by him, and for this reason, said deed is and should be decreed null and void. He avers that he is ready and willing and does tender to plaintiff that certain land owned by him in the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4) of said Section 5, and is ready and willing to execute to him proper deed conveying the same. Defendant prays that plaintiff's demand be rejected at his cost, in the event that the tender to him is not accepted; that the deed between them be decreed null and void and its registry ordered canceled.

There was judgment correcting and reforming the description in the deed in question as contended for by defendant. In other respects plaintiff's demand was rejected. Defendant was cast for costs which accrued to the time tender of deed to this land was made to plaintiff. Plaintiff was cast for costs subsequently accruing. He appealed.

On the trial of the case the entire record in the prior suit was introduced in evidence by plaintiff. Additional testimonial proof was adduced. This additional testimony, while in the main, is cumulative of that formerly adduced, is sufficient in probative weight, when supplemented by that in the first case, to warrant judgment for plaintiff.

There are two material errors in the description in the deed from defendant to plaintiff which each recognizes. The range number should be eight (8) instead of nine (9). The land defendant intended to sell was not east of the Minden-Sparta Road as he owned none at all on that side of it.

A survey of the lands owned by defendant prior to executing the deed to plaintiff was made since the disposition of the first suit which disclosed that he then owned the two tracts described in the petition and also a triangular shaped tract of 1.4 acres in the Southwest (SW) corner of the Northeast Quarter (NE 1/4) of the Southeast Quarter (SE 1/4), the east side of which is the Minden-Sparta Road. Tract "B", according to the survey, however, contains 33.48 acres, not 27.25 as alleged, whereas tract "A" contains only 4.33 acres, not 13 as alleged. Of the 33.48 acres in tract "B", 11.95 acres thereof are in the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4) and 21.53 acres are in the Northwest Quarter (NW 1/4) of the Southeast Quarter (SE 1/4).

The north line of tract "B" is a diagonal. It begins at a point on the west line of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4) 206 feet from the Southwest (SW) corner thereof and runs north 75° 30' east, 2,443 feet to said Minden-Sparta Road. This tract abuts said road 531 feet. The remainder of its east boundary is the line common with said 1.4-acre tract.

Defendant on June 17, 1924, owned the East One-Half (E 1/2) of the Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4), Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4), Southeast Quarter (SE 1/4) of the Northwest Quarter (NW 1/4) and all that part of the West One-Half (W 1/2) of the Northeast Quarter (NE 1/4) and Northwest Quarter (NW 1/4) of the Southeast Quarter (SE 1/4) of said Section 5 which lies west of the Minden-Sparta Road, less six (6) acres previously sold. On that date he mortgaged this tract of land to the Federal Land Bank for $2,200, payable in thirty-five (35) fixed annual installments.

On December 16, 1925, defendant conveyed to C. S. and C. L. Coussons all of said mortgaged land except said tract "B". The acreage accredited to this exception is given at 27.25. The consideration of the sale was an amount in cash and the assumption by the vendee of $1,600 of the mortgage to the Federal Land Bank. As between these parties, the excepted tract ("B") would stand to secure payment of the balance of said mortgage debt, or $600. The mortgage was never divided and, presumably, the Coussons and defendant jointly paid the annual installments thereon as they matured. However, it appears that defendant was in arrears on his obligation in this respect when he made deed to plaintiff. Also, at that time two other creditors had procured judgments against him. The record indicates that he was then insolvent and was anxious to dispose of his remaining property and secure therefrom sufficient cash to engage in a peanut vending business.

Plaintiff is positive that defendant proposed to sell to him and that he bought all of the land defendant owned which was on the west side of said road and contained, he thought, 40.25 acres. Defendant is now quite certain he offered to sell to plaintiff only the land which he owned in his west forty (NE 1/4 of the SW 1/4) or 11.95

acres, for $650. It is here recalled that his original position, reflected from his answer in the first suit, was that the description in the deed was correct save error in range number. This 11.95-acre tract is one-fourth (1/4) of a mile from the Minden-Sparta Road. The 21.53-acre tract in the Northwest Quarter (NW 1/4) of the Southeast Quarter (SE 1/4) is between it and the road.

It is certain from the description in the deed and from oral testimony that the land intended to be bought and sold was on this road. As defendant owned no land on the east side of the road, it follows that the west side was in the minds of both parties when the sale was consummated. We think the 1.4-acre tract was also intended to be included in the sale but plaintiff has omitted that tract from his demand.

On September 14, 1932, defendant and W. M. McBride entered into a written contract whereby the latter agreed to sell to the former: "All that land owned at the present time by C. G. Smythe, lying South of the division line, and bound on the north by the place owned by C. S. Coussons, known as part of the W. F. Culpepper tract of land, containing 37 acres, more or less, and situated near the village of Dubberly, Louisiana."

Deed under this contract was to be made at the end of five (5) years from date of the contract, provided that Smythe could then give a clear title to the land, free of judicial mortgages. The consideration was $70 in cash and the agreement on the part of McBride to pay all taxes assessed against the land, including the fifth year of the contract, and to pay all installments due the Federal Land Bank on its first mortgage against the land for the period of the contract.

McBride testified that he was under the impression that defendant owned thirty-seven (37) acres and that it was all in one 40. This was only a supposition on his part as he was unacquainted with the lines and had not had the land surveyed. Plaintiff approached McBride for a release to him of his rights under the contract with defendant, and they reached an agreement. McBride undertook to determine the exact governmental subdivision in which the land covered by his contract was located. It was he who blocked out the description incorporated in the deed from defendant to plaintiff. The same description was put in the release, given by McBride to plaintiff.

He was certain his contract with defendant covered all the lands owned by defendant and that it was his purpose to assign to plaintiff all his rights under the contract. Defendant admits that the McBride contract was intended to cover, and did cover, all lands owned by him.

Plaintiff was not present when defendant executed the deed to him. He did not read it before being registered. He left the $50 with his attorney to be delivered when the deed was signed.

Defendant admits that plaintiff, immediately after the execution of the deed in question, went into possession of all the land in Section 5 he had not previously sold to C. S. and C. L. Coussons; that plaintiff has been annually assessed therewith and paid all taxes due thereon. It is shown that plaintiff has paid the Federal Land Bank his portion of the installments due by him under the assumption in the deed.

Defendant gave the following significant testimony:

"Q. Why wasn't it assessed to you as that much acreage? A. You will have to ask the assessor about that.

"Q. You turned it in didn't you? A. I don't remember of turning it in. If I ever turned it in I have no recollection."

As mentioned above, the 1.4-acre tract in the Northeast Quarter (NE 1/4) of the Southeast Quarter (SE 1/4) and the 4.33-acre tract in the Southeast Quarter (SE 1/4) of Southeast Quarter (SE 1/4) were not included in the mortgage to the Federal Land Bank. In regard to this acreage, defendant testified as follows:

"Q. Did you ever agree to sell any land other than that particular part? A. No. All the land lying on the west side of the road wasn't under mortgage.

"Q. You only got $50.00 for that? A. Yes."

To us, this testimony clearly means that defendant fixed a value of $50 on the land not included in the Federal Land Bank mortgage and plaintiff paid him for it and that he valued tract "B" at $600, which was to be paid under the assumpsit. It is also significant that defendant exacted that plaintiff assume the even amount of $600 of the mortgage debt to the bank. The Coussons had previously assumed $1,600 thereof and this assumption, plus that of the defendant, equals the amount of the original mortgage indebtedness.

Representatives of defendant's judgment creditors testified that when defendant approached them for a release of their company's judgment, prior to closing the sale to plaintiff, defendant gave them to understand that all the land he then owned, supposedly some forty (40) acres, was being conveyed to plaintiff and that defendant would have nothing left when the sale was closed. Defendant informed them that he was getting a little money out of the sale which he intended to invest in a small business from which he would from week to week make payments on the judgments. Believing their judgments of little or no value, these creditors granted releases largely as an accommodation to defendant.

Another circumstance favors plaintiff. The 11.95-acre tract, defendant contends he sold, is unimproved hill land, the value of which is shown to have been not more than $15 per acre. Why would plaintiff wish to purchase this isolated tract and pay over $50 per acre therefor? The improved portion of tract "B" is on its east side adjacent to the road.

■ The general rule that authentic acts say what they mean and mean what they say, and, presumably, evidence the mutual agreement of the signatories thereto, is not applicable to the facts of this case. Here both parties concede the description in the deed to be incorrect, but differ widely as to the description that should have been placed therein. Therefore, it is only necessary that plaintiff prove his position by a preponderance of the evidence. The recitals of the deed need not be overcome by specific proof, nor the usual presumption as to its correctness rebutted. A decided preponderance of the evidence supports plaintiff's contention. Every inference and circumstance arising from or pertinent to the evidence points unquestionably to defendant's position as being incorrect.

One witness for defendant claims to have heard the conversation between plaintiff and defendant when they orally reached an agreement looking to the sale. He says that defendant stated he was selling land in only one 40. If this were correct, the 40 would certainly have been the Northwest Quarter (NW 1/4) of the Southeast Quarter (SE 1/4) because it is equally certain the land plaintiff was buying and that which defendant was selling to him was on the Minden-Sparta Road.

Plaintiff testified that when he discovered the error in the deed, he informed defendant of that fact and requested that he execute a correcting deed, to which he assented, however, this was not done and soon thereafter prospecting for oil in that section of the parish sent mineral lease values rapidly upward. Defendant testified he was offered $100 per acre for a lease on the land involved herein, but that a lease thereof was blocked by the first lawsuit. It is not improbable that the sudden ascent in lease values had a material bearing upon defendant's attitude toward correcting the deed. Such things do often influence men to reverse their position and to view things in a different light to what they might view them in the absence of such inducement.

■ Defendant does not here urge the defense that the deed is null and void because plaintiff has not discharged in full the $600 due on the Federal Land Bank mortgage. It is evidently abandoned. We think it without merit. The assumpsit did not require that he pay this amount before it matured. In the absence of an agreement to do so it will not be inferred. Plaintiff has promptly paid his proportionate part of each annual installment due the bank and in so doing met his obligations under the assumpsit.

For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and there is now judgment in favor of plaintiff, W. Bryan Coussons, and against defendant, Chester G. Smythe, decreeing that that certain deed from defendant to plaintiff, dated April 24, 1935, and recorded in Volume 100, page 504 of the Conveyance Records of Webster Parish, Louisiana, be corrected and reformed in description therein so as to embrace and cover tracts "A" and "B", as herein designated, and which are fully described in plaintiff's petition; and recognizing plaintiff as the legal owner thereof. Defendant is cast for all court costs.

DREW, J., recused.